Opinion issued March 26, 2009 















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00754-CV

__________


RAYMOND SOMERS, DERIVATIVELY ON BEHALF OF EGL, INC., AND
VIVIAN GOLOMBUSKI AND PLATINUM PVA FUND, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, AND
PLATINUM PVA FUND, Appellants


V.


JAMES R. CRANE, MILTON CARROLL, JAMES C. FLAGG, FRANK J.
HEVRDEJS, PAUL W. HOBBY, MICHAEL K. JHIN, NEIL E. KELLEY,
SHERMAN WOLFF, CENTERBRIDGE PARTNERS, L.P., THE
WOODBRIDGE CO. LTD. AND NOMINAL DEFENDANT EGL, INC.,
Appellees






On Appeal from the 125th District Court

Harris County, Texas

Trial Court Cause No. 2007-00139












NO. 01-08-00119-CV

__________


RAYMOND SOMERS, DERIVATIVELY ON BEHALF OF EGL, INC.,
Appellant


V.


JAMES R. CRANE, MILTON CARROLL, JAMES C. FLAGG, FRANK J.
HEVRDEJS, PAUL W. HOBBY, MICHAEL K. JHIN, NEIL E. KELLEY,
SHERMAN WOLFF, CENTERBRIDGE PARTNERS, L.P., THE
WOODBRIDGE CO. LTD. AND NOMINAL DEFENDANT EGL, INC.,
Appellees






On Appeal from the 125th District Court

Harris County, Texas

Trial Court Cause No. 2007-56930





O P I N I O N

 In appellate cause number 01-07-00754-CV, appellants, Raymond Somers,
derivatively on behalf of EGL, Inc., and Vivian Golombuski and Platinum PVA Fund,
on behalf of themselves and all others similarly situated (the "Class"), challenge the
trial court's order dismissing their breach of fiduciary duty claims against appellees,
James R. Crane, Milton Carroll, James C. Flagg, Frank J. Hevrdejs, Paul W. Hobby,
Michael K. Jhin, Neil E. Kelley, Sherman Wolff, Centerbridge Partners, L.P., the
Woodbridge Co., Ltd., and Nominal Defendant EGL, Inc. 

 In two issues, Somers contends that the trial court erred in granting appellees'
motion to dismiss and special exceptions on the ground that Somers's presuit demand
"failed to comply with [article 5.14(C) of the Texas Business Corporation Act]" (1) and
that the trial court "abuse[d] its discretion by denying Somers's motion for leave to
amend and request for findings of fact and conclusions of law." In its first issue, the
Class contends that the trial court erred in granting appellees' motion to dismiss
because "[i]n a cash-out merger where the corporation will no longer exist in its pre-merger form and the shareholders will be dispossessed of any interest in the
corporation after the merger, . . . the directors of a Texas corporation owe [a]
fiduciary duty directly to the shareholders of a corporation." In its second issue, the
Class contends that the trial court erred in denying its new trial motion so that it could
plead new causes of action based upon "false and misleading statements" in a proxy
that solicited their votes in favor of the merger.

 In appellate cause number 01-08-00119-CV, appellant, Raymond Somers,
derivatively on behalf of EGL, Inc., challenges the trial court's order dismissing his
breach of fiduciary duty claims brought against appellees, James R. Crane, Milton
Carroll, James C. Flagg, Frank J. Hevrdejs, Paul W. Hobby, Michael K. Jhin, Neil E.
Kelley, Sherman Wolff, Centerbridge Partners, L.P., the Woodbridge Co., Ltd., and
Nominal Defendant EGL, Inc. based on appellees' pleas to the jurisdiction. In a
single issue, Somers contends that the trial court erred in granting appellees' pleas to
the jurisdiction on the ground that Somers lacked standing to sue derivatively on
EGL's behalf. 

 We affirm the orders of the trial court. 

Factual and Procedural Background

 In his fourth amended petition in appellate cause number 01-07-00754-CV,
Somers alleges that Crane, who was EGL's Chairman, Chief Executive Officer, and
dominating shareholder, and Carroll, Flagg, Hevrdejs, Hobby, Jhin, Kelley, and
Sherman, who were EGL's Board of Directors, engaged in efforts to "complete a
management-led buyout of EGL" at an inadequate price as well as efforts "to provide
certain insiders and directors with preferential treatment at the expense of . . . and
unfair to [EGL's] public shareholders." Somers asserts that a "Special Committee,"
which was appointed by and made up of Board members who "were dominated and
controlled by Crane," "collectively engaged in a scheme to unfairly sell the Company
to Crane" for an undervalued price (the alleged "Crane Acquisition").

 Somers further alleged that on March 19, 2007, the Board announced to EGL
shareholders that they had accepted an "unfairly low" bid of $38 per share offered by
the Buyout Group consisting of Crane, Centerbridge, and Woodbridge, but they
"failed to tell shareholders" that a third party, Apollo Management LP, had submitted
a higher bid that the Special Committee had refused to consider. Somers asserts that
appellees breached their fiduciary duties by initially refusing to consider this
competing offer and by subsequently agreeing to "lock up" the "Crane Acquisition
with [allegedly] onerous deal protection devices," such as a $30 million termination
fee, 51% of which was payable directly to Crane, if the Crane Acquisition was not
consummated. Somers complains that these and other deal-protection devices made
"it impossible for any bidder other than the Buyout Group to buy [EGL] directly" and,
because of the deal protection devices, Apollo and other competing bidders were
significantly disadvantaged in the sales process.

 Somers further alleges that Apollo, which remained interested in buying EGL,
brought suit against appellees and, upon learning of Apollo's lawsuit, Somers, on
April 11, 2007, filed a motion for temporary injunction and appointment of receiver
"aimed at securing an open sales process." Somers agrees in his petition that Apollo
had ultimately made the prevailing bid, and, on May 24, 2007, EGL announced that
it had entered into a merger agreement with Apollo. However, Somers complains that
EGL also announced that it had paid the termination fee to the Buyout Group, a
significant portion of which went directly to Crane. (2)

 Somers asserts claims against appellees for breach of fiduciary duty and
contends that appellees Centerbridge and Woodbridge engaged in a conspiracy and
aided and abetted appellees' breach of fiduciary duty. Somers also asserts that
appellees engaged in self-dealing, "abuse of control," "gross mismanagement," and
"waste of corporate assets." Somers notes that he brought his suit derivatively, and
he represents that he will "adequately and fairly" represent the interests of EGL and
its shareholders. Somers further asserts that he owned EGL stock "during all relevant
times" and he made demands upon the Board on January 4, 2007, March 20, 2007,
and April 4, 2007, pursuant to article 5.14(c) of the Texas Business Corporation Act,
but the Board did not comply with his demands and EGL is being irreparably
harmed. (3)

 In his prayer, Somers requests an order directing appellees to exercise their
fiduciary duties to obtain a transaction in EGL's best interest, rescinding the Crane
Acquisition or any terms thereof, and imposing a constructive trust upon any benefits
improperly received by appellees, including the termination fee.

 The Class, in its consolidated amended class action, makes allegations similar
to those in Somers's petition, but the Class sues appellees directly rather than
derivatively. Like the claims asserted by Somers, the Class asserts claims for breach
of fiduciary duties and aiding and abetting breach of fiduciary duties against
appellees.

 Appellees filed their motion to dismiss and special exceptions, which the trial
court granted. Somers then filed his motion for leave to amend, and he requested
findings of fact and conclusions of law, which the trial court denied. The Class filed
its motion for reconsideration and new trial and motion for leave to amend petition,
both of which the trial court denied. 

 In response to the arguments made by appellees in appellate cause number 01-07-00754-CV that he had not provided proper pre-suit notice, Somers made another
pre-suit demand in June 2007, waited 90 days, and then filed his second derivative
suit, appellate cause number 01-08-00119-CV, on September 18, 2007, after the EGL
merger had been consummated and after he had lost his shareholder status. The Class
was not a party to this second suit. Somers's factual allegations in this second suit
largely mirror those contained in his petition in the first suit. Additionally, Somers
alleges that, on July 31, 2007, EGL held a meeting where shareholders were asked to
approve the merger with Apollo, a majority of the shares represented voted in favor
of the merger, and Apollo's acquisition of EGL was consummated on August 2, 2007.

 Somers reasserts the same claims against the individual appellees for breach
of fiduciary duty, "self-dealing," "abuse of control," "gross mismanagement," and
"waste of corporate assets." Against appellees Centerbridge and Woodbridge,
Somers asserts claims for conspiracy and aiding and abetting breach of fiduciary duty. 
Somers also similarly asserts that he would "adequately and fairly" represent the
interests of EGL and its shareholders in this second suit, and he asserts that he owned
EGL stock "during all relevant times." Somers further states that, pursuant to article
5.14(c), he made demand upon the Board on June 12, 2007 "to immediately take steps
to ensure that [EGL] was compensated for the Board's breaches of fiduciary duty,
either by voluntarily repaying the $30 million in damages caused to [EGL] when the
termination fee was paid, or by commencing a legal proceeding on behalf of the
Company against each EGL Board member for their breaches of fiduciary duty." 
Somers states that he "did not receive a substantive response to his demand prior to
the expiration of 90 days from the date his demand was made, or by September 10,
2007." 

 In his prayer, Somers requests an order declaring that, by agreeing to the Crane
Acquisition, appellees breached their fiduciary duties as well as an order rescinding
the payment of the termination fee to the Buyout Group and awarding damages to
EGL and its former shareholders. 

 Appellees filed pleas to the jurisdiction, arguing that Somers lacks standing to
bring the derivative suit on behalf of EGL because, in light of Apollo's acquisition
of EGL, Somers was no longer an EGL shareholder at the time he filed suit. The trial
court granted appellees' pleas and dismissed Somers's suit.

Standard of Review

 "We review a trial court's dismissal of a case upon special exceptions for
failure to state a cause of action as an issue of law, using a de novo standard of
review." Alpert v. Crain, Caton, & James, P.C., 178 S.W.3d 398, 405 (Tex.
App.--Houston [1st Dist.] 2005, pet. denied); Shirvanian v. DeFrates, 161 S.W.3d
102, 105 (Tex. App.--Houston [14th Dist.] 2004, pet. denied). We accept as true all
of the plaintiff's material factual allegations and all reasonable inferences from those
allegations. DeFrates, 161 S.W.3d at 105.

 We also review de novo a trial court's ruling on a plea to the jurisdiction,
which is a dilatory plea that seeks dismissal of a case for lack of subject matter
jurisdiction, because subject matter jurisdiction is a question of law. Harris County
v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004); Texas Nat. Res. Conservation Comm'n
v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). In reviewing the trial court's ruling on
a plea to the jurisdiction, we construe the pleadings liberally in favor of the plaintiff
and determine if the plaintiff is alleging facts that affirmatively demonstrate the
court's jurisdiction to hear the cause. Villarreal v. Harris County, 226 S.W.3d 537,
541 (Tex. App.--Houston [1st Dist.] 2006, no pet.). We may also consider evidence
necessary to resolve the jurisdictional issues raised. County of Cameron v. Brown,
80 S.W.3d 549, 555 (Tex. 2002). If the pleadings affirmatively negate the existence
of jurisdiction, then the trial court may grant a plea to the jurisdiction without
providing the plaintiff an opportunity to amend. Tex. Dep't of Parks & Wild. v.
Miranda, 133 S.W.3d 217, 227 (Tex. 2004). 

The Class Appeal

Fiduciary Duties Owed Directly to Shareholders

 In appellate cause number 01-07-00754-CV, in its first issue, the Class argues
that the trial court erred in granting appellees' motion to dismiss because "[i]n a cash-out merger where the corporation will no longer exist in its pre-merger form and the
shareholders will be dispossessed of any interest in the corporation after the merger,
. . . the directors of a Texas corporation owe [a] fiduciary duty directly to the
shareholders of a corporation." Appellees argue that the trial court properly granted
their special exceptions and dismissed the shareholder class action because the Class
has "no direct right of action against [appellees] for alleged breach of fiduciary duty." 

 "A director's fiduciary duty runs only to the corporation, not to individual
shareholders or even to a majority of the shareholders." Hoggett v. Brown, 971
S.W.2d 472, 488 (Tex. App.--Houston [14th Dist.] 1997, pet. denied) (citing
Gearhart Indus., Inc. v. Smith Int'l Inc., 741 F.2d 707, 721 (5th Cir. 1984) and
Schautteet v. Chester State Bank, 707 F. Supp. 885, 888 (E.D. Tex. 1988)); see also
In re Webber, 350 B.R. 344, 364 (S.D. Tex. 2006) ("With respect to a formal
fiduciary relationship, a corporate officer's fiduciary duty generally runs only to the
corporation and not to individual shareholders."); Scherrer v. Haynes and Boone,
L.L.P., No. 01-99-01164-CV, 2002 WL 188825 (Tex. App.--Houston [1st Dist.] Feb.
7, 2002, no pet.) (opinion not designated for publication) ("A corporate director's
fiduciary duty runs only to the corporation, not to individual shareholders."); Aitlqaid
v. Soussan, No. 01-98-01017-CV, 2001 WL 301430 (Tex. App.--Houston [1st Dist.]
Mar. 29, 2001, no pet.) (opinion not designated for publication) (same); A. Copeland
Enters., Inc. v. Guste, 706 F. Supp. 1283, 1288 (W.D. Tex. 1989) ("Claims
concerning breach of a corporate director's fiduciary duties can only be brought by
a shareholder in a derivative suit because a director's duties run to the corporation,
not to the shareholder in his own right."). "[T]he right to proceed against an officer
or former officer of a corporation for breaching a fiduciary duty owed to the
corporation belongs to the corporation itself." Grinnell v. Munson, 137 S.W.3d 706,
718 (Tex. App.--San Antonio 2004, no pet.). "While corporate officers owe
fiduciary duties to the corporation they serve, they do not generally owe fiduciary
duties to individual shareholders unless a contract or confidential relationship exists
between them in addition to the corporate relationship." Cotten v. Weatherford
Bancshares, Inc., 187 S.W.3d 687, 698 (Tex. App.--Fort Worth 2006, pet. denied)
(emphasis added); see also Grinnell, 137 S.W.3d at 718. Due to the "extraordinary
nature" of a fiduciary relationship, the law does not recognize such a relationship
lightly. Cotten, 187 S.W.3d at 698. 

 Here, the Class does not allege that it had a separate contract with appellees nor
that it had a special or confidential relationship of the kind previously recognized by
Texas courts sufficient to create a fiduciary duty. See Hoggett, 971 S.W.2d at 488
n.13 (stating that "in certain limited circumstances, a majority shareholder who
dominates control over the business may owe such a duty to the minority
shareholder"). The Class's relationship with appellees was solely a corporate
relationship. 

 The Class contends that there is a "special relationship" between directors and
shareholders created in the context of a cash-out merger. The Class asserts that "it
is hardly clear that a general rule based on a corporate relationship should apply as
normally after that corporate relationship ceases to exist." However, the Class
concedes that there is no Texas authority recognizing the creation of such a duty in
a cash-out merger. Because fiduciary relationships are of an "extraordinary nature"
and should not be recognized lightly, and because of the abundant authority stating
that a director's or officer's fiduciary duty runs only to the corporation, not to
individual shareholders, we decline to recognize the existence of a fiduciary
relationship owed directly by a director to a shareholder in the context of a cash-out
merger. Accordingly, we hold that the Class cannot bring a cause of action directly
against appellees for breach of fiduciary duty. We further hold that the trial court did
not err in sustaining appellees' special exceptions on this ground and in dismissing
the Class's suit. 

 We overrule the Class's first issue.

Denial of Motion for New Trial

 In its second issue, the Class contends that the trial court erred in denying its
new trial motion so that it could plead new causes of action based upon "false and
misleading statements" in a proxy that solicited the shareholders' votes in favor of the
merger. Appellees argue that the trial court did not abuse its discretion in denying the
Class's motion for leave to amend because the Class "sought to amend their [sic]
petition to assert a new claim that could not have been brought until after the trial
court dismissed their petition because it was based on subsequent events."

 In support of its argument that the trial court abused its discretion in denying
its new trial motion and request to amend its pleadings, the Class cites, among other
cases, Weidner v. Sanchez, 14 S.W.3d 353, 376 (Tex. App.--Houston [14th Dist.]
2000, no pet.). In Weidner, the court stated that "[a] trial court has no discretion to
refuse a post-verdict amendment of pleadings unless the opposing party presents
evidence of surprise or prejudice, or the amendment asserts a new cause of action or
defense and the opposing party objects to the amendment." Id. (emphasis added). Here, the trial court signed its order granting appellees' motions to dismiss and
special exceptions on June 8, 2007. In its motion for reconsideration and new trial
and motion for leave to amend, the Class asserted that, on June 26, 2007, two weeks
after the trial court dismissed its suit, EGL filed a proxy statement that was
"materially false and misleading." The Class sought to amend its petition to add
"direct" claims related to these proxy statements. Appellees filed a response to this
motion, objecting to the Class's efforts to amend its petition and add these claims. 
Because the Class sought to add new claims arising out of a proxy statement that
issued after the trial court had dismissed the Class's original breach of fiduciary duty
claims, and because appellees objected to the Class's efforts to add these new causes
of action after the trial court had already dismissed the original case, we hold that the
trial court did not abuse its discretion in denying the Class's motion for
reconsideration and new trial and motion for leave to amend seeking to add these new
claims.

 We overrule the Class's second issue.

Somers's Derivative Standing

 In appellate cause number 01-08-00119-CV, in a single issue, Somers contends
that the trial court erred in granting appellees' pleas to the jurisdiction on the ground
that Somers lacked standing to sue derivatively on EGL's behalf. Somers asserts that
"[u]nder the plain meaning of the Texas Business Corporation Act, he has standing
to prosecute the derivative action" and"[a]ny other conclusion would make Texas the
only jurisdiction in which shareholders have absolutely no mechanism to secure a
remedy for corporate misconduct in the context of a merger transaction." Appellees
respond that "[i]t is well established under Texas law that a shareholder must own
stock at the time of filing a derivative suit and continuously through the completion
of the suit to have derivative standing," and, since it was undisputed that Somers was
not a shareholder at the time he filed suit, the trial court properly granted their pleas
to the jurisdiction.

 Article 5.14(B) of the Texas Business Corporation Act, entitled "Derivative
Proceedings," provides,

B. Standing. 


A shareholder may not commence or maintain a derivative proceeding
unless the shareholder:


 (1) was a shareholder of the corporation at the time of
the act or omission complained of or became a
shareholder by operation of law from a person that
was a shareholder at that time; and


 (2) fairly and adequately represents the interests of the
corporation in enforcing the right of the corporation.


Tex. Bus. Corp. Act Ann. art. 5.14(B) (Vernon 2003). Shareholder is defined in the
Business Corporation Act to mean "the person in whose name shares issued by a
corporation are registered at the relevant time in the share transfer records maintained
by the corporation pursuant to Article 2.44 of this Act." Id. art. 1.02(A)(22) (Vernon
Supp. 2008). (4) Subsection (M) of article 5.03 of the Texas Business Corporation Act,
entitled "Action on Plan of Merger or Exchange," provides, "To the extent a
shareholder of a corporation has standing to institute or maintain derivative
litigation on behalf of the corporation immediately before a merger, nothing in this
article may be construed to limit or extinguish the shareholder's standing." Id. art.
5.03(M) (Vernon Supp. 2008).

 We start with the plain meaning of the controlling statute, article 5.14. 
Although the parties present opposing constructions of the plain meaning of this
article, we conclude that article 5.14(B) states, in no uncertain terms, that "[a]
shareholder may not commence or maintain a derivative proceeding unless the
shareholder . . . ." meets certain requirements. Tex. Bus. Corp. Act Ann. art.
5.14(B) (Emphasis added). Article 5.14(B) refers twice to shareholders, not former
shareholders. Accordingly, we hold that, under the plain language of article 5.14(B),
Somers is not entitled to bring a derivative proceeding. 

 Our holding is consistent with the only Texas case to squarely address
derivative standing under article 5.14(B), albeit a predecessor version that has since
been amended. See Zauber v. Murray Sav. Ass'n, 591 S.W.2d 932, 935 (Tex. Civ.
App.--Dallas 1979), writ ref'd per curiam, 601 S.W.2d 940 (Tex. 1980). The court
in Zauber considered a former version of article 5.14(B), which provided that "[a]
derivative suit may be brought in this State only if: (1) The plaintiff was a record or
beneficial owner of shares . . . at the time of the transaction of which he complains
. . . ." Id. at 936 (citing former Tex. Bus. Corp. Act Ann. art. 5.14(B)). In applying
this article, the Zauber court explained,

The requirement in article 5.14(B) that in order to bring a derivative suit
a plaintiff must have been a shareholder at the time of the wrongful
transaction, is only a minimum requirement. The federal rule governing
derivative suits, which contains similar requirements to article 5.14(B),
has been construed to include a further requirement that shareholder
status be maintained throughout the suit. The reasoning behind allowing
a shareholder to maintain a suit in the name of the corporation when
those in control wrongfully refuse to maintain it is that a shareholder
has a proprietary interest in the corporation. Therefore, when a
shareholder sues, he is protecting his own interests as well as those of
the corporation. If a shareholder voluntarily disposes of his shares after
instituting a derivative action, he necessarily destroys the technical
foundation of his right to maintain the action. If, on the other hand, a
shareholder's status is involuntarily destroyed, a court of equity must
determine whether the status was destroyed without a valid business
purpose; for example, was the action taken merely to defeat the
plaintiff's standing to maintain the suit? 


Id. at 937-38 (emphasis added) (citations omitted). Thus, the court in Zauber
indicated that a shareholder must remain a shareholder in order to maintain a
derivative suit. Id.; see also Prudential-Bache Secs., Inc. v. Matthews, 627 F. Supp.
622, 624 (S.D. Tex. 1986) (stating that "[s]tanding to bring a derivative action arises
from the proprietary interest created by the stockholder relationship and the possible
indirect benefits the nominal plaintiff may acquire qua stockholder of the corporation
which is the real party in interest" and that "Texas law mandates that a derivative
plaintiff maintain status as a shareholder"); Lewis v. Ward, 852 A.2d 896, 902-04
(Del. 2004) (reviewing cases that have applied general rule holding that
stockholder-plaintiff may not continue to pursue derivative claims following merger
that eliminates plaintiff's shareholder status unless facts are alleged that fall within
one of two exceptions to general rule); (5) Schreiber v. Carney, 447 A.2d 17, 21 (Del.
Ch. 1982) (stating that plaintiff who brings derivative suit on behalf of corporation
must be stockholder of corporation at time he commences suit and that "it is clear that
a merger which eliminates a complaining stockholder's ownership of stock in a
corporation also ordinarily eliminates his status to bring or maintain a derivative suit
on behalf of the corporation, whether the merger takes place before or after the suit
is brought, on the theory that upon the merger the derivative rights pass to the
surviving corporation which then has the sole right or standing to prosecute the
action").

 Somers seeks to distinguish Zauber by noting that the Legislature amended
former article 5.14(B) in 2003 to provide that "[a] shareholder may not commence or
maintain a derivative proceeding unless the shareholder: (1) was a shareholder of the
corporation at the time of the act or omission complained of . . . ." Tex. Bus. Corp.
Act Ann. art. 5.14(B) (emphasis noted by Somers). But the implied requirement
recognized by the Zauber court that a shareholder must remain a shareholder and
retain his shareholder status to maintain a derivative suit did not expressly appear in
former article 5.14(B), and nothing in the amended version of article 5.14(B) conflicts
with Zauber either. See Zauber, 591 S.W.2d at 937 (stating that requirement in
article 5.14(B) was "only a minimum requirement"). As noted by appellees in their
briefing, "Under either version of the statute, Somers would have had standing were
contemporaneous ownership sufficient." In accord with the plain language of article
5.14, we hold that a plaintiff seeking to derivatively enforce the rights of a
corporation must be a shareholder. 

 Somers also argues that article 5.03(M) of the Texas Business Corporation Act
supports his contention that he has standing to commence and maintain the derivative
suit even though it is undisputed that he was not a shareholder at the time he filed
suit. However, we agree with appellees that nothing in article 5.03(M) confers
standing. Rather, article 5.03(M) merely states that "To the extent a shareholder of
a corporation has standing to institute or maintain derivative litigation on behalf of
the corporation immediately before a merger, nothing in this article may be construed
to limit or extinguish the shareholder's standing." Id. art. 5.03(M) (emphasis added). 
Appellees present multiple theories on the effect or meaning of article 5.03(M),
specifically asserting that article 5.03(M) should be construed, at most, to mean that
a shareholder's standing is not destroyed when that shareholder receives stock in a
new corporation rather than cash after a cash-out merger. In that instance, appellees
acknowledge that a shareholder might continuously maintain an economic interest in
the derivative recovery on behalf of the corporation, but such is not the case where,
like here, the plaintiff receives cash in a cash-out merger and no longer owns any
shares. See Blasband v. Rales, 971 F.2d 1034, 1041 (3d Cir. 1992) ("Where there has
been a cash-out merger, it is clear that a former shareholder may not maintain a
derivative action, for he or she would no longer have an interest in a subsequent
corporate recovery. . . . However, where, as here, the plaintiff receives shares of a
new corporate entity, the standing issue is less clear, as the plaintiff will have a
financial interest in the derivative action."). We agree and hold that article 5.03(M)
does not confer standing on a former shareholder like Somers who otherwise lacks
standing. (6) 

 We overrule Somers's sole issue in appellate cause number 01-08-00119-CV.


Conclusion

 In appellate cause number 01-07-00754-CV, we affirm the trial court's orders 
dismissing the Class's claims against appellees and denying the Class's new trial
motion. In appellate cause number 01-08-00119-CV, we affirm the order of the trial
court dismissing Somers's claims against appellees because Somers, as a former
shareholder, lacks derivative standing. We similarly hold, in appellate cause number
01-07-00754-CV, that even if the trial court erred in granting appellees' motion to
dismiss and special exceptions or even if the trial court abused its discretion in
denying Somers's motion for leave to amend and request for findings of fact and
conclusions of law, Somers would lack standing to pursue his claims derivatively
because it is undisputed EGL no longer exists and Somers is no longer a shareholder. 
Our holding that Somers is not entitled to pursue his claims derivatively is dispositive
of his claims in both appellate cause numbers. 


 

 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.


 

1. See Tex. Bus. Corp. Act Ann. art. 5.14(C) (Vernon 2003).
2. Somers's fourth amended petition, the live petition at the time the trial court
dismissed his claims, was filed on May 25, 2007, one day after EGL's announcement
that it had entered into a merger agreement with Apollo and paid the termination fee
to Crane's Buyout Group.
3. Recognizing that article 5.14 does not contain a futility exception, Somers has not
asserted on appeal that he was excused from making a demand because such a
demand was futile, but rather has only argued that his demand complied with article
5.14. See Tex. Bus. Corp. Act Ann. art. 5.14(C).
4. Article 5.14(A)(2) further provides that "'[s]hareholder' includes a beneficial owner
whose shares are held in a voting trust or by a nominee on the beneficial owner's
behalf." Tex. Bus. Corp. Act Ann. art. 5.14(A)(2) (Vernon 2003). 
5. The court stated that there were two exceptions "to its holding that only a current
shareholder has standing to maintain an action that is derivative in nature: (i) if the
merger itself is the subject of a claim of fraud, being perpetrated merely to deprive
shareholders of the standing to bring a derivative action; or (ii) if the merger is in
reality merely a reorganization which does not affect plaintiff's ownership in the
business enterprise." Lewis v. Ward, 852 A.2d 896, 902 (Del. 2004). Even assuming
that Texas law may recognize similar exceptions to this general rule, see Zauber v.
Murray Sav. Ass'n, 591 S.W.2d 932, 935 (Tex. Civ. App.--Dallas 1979), writ ref'd
per curiam, 601 S.W.2d 940 (Tex. 1980), they do not apply here. Somers does not
allege that the merger was perpetrated to commit a fraud, nor does he allege any
wrongdoing by Apollo, the eventual purchaser of EGL. We note that Somers is not
seeking to void the Apollo acquisition. Somers's sole argument is that, under Texas
law, a former shareholder may both commence and maintain a derivative suit on
behalf of a company that has been merged out of existence.
6. In support of his arguments that article 5.03(M) may confer standing on a former
shareholder to bring a derivative suit, Somers cites Marron v. Ream, No. CIVA
H-06-1394, 2006 WL 2734267 (S.D. Tex. May 05, 2006). However, we agree with
appellees that the issue of standing of a former shareholder to bring suit derivatively
is not squarely addressed in Marron and that the statements cited by Somers are dicta. 
Id. at *7 (suggesting that shareholder who may give up shares if merger is
consummated "may still not be deprived of his opportunity to institute or maintain a
derivative suit on behalf of [the company]") (emphasis added).