01-14-00314-CV

ACCEPTED
05-10-01487-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 9:35:14 AM
CHRISTOPHER PRINI
CLERK

No. 05-10-01487-CV

IN THE FIRST COURT OF APPEALS FOR THE STATE OF TEXAS

HASEEB A. BUTT, Appellant

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 9:35:14 AM
CHRISTOPHER A. PRINE
Clerk

v.

SAJID KHAN NIAZI, AYESHA KHAN, AMIRA SOUSSA AND DUNCANVILLE REAL ESTATE, LLC, Appellees.

On appeal from the 113th District Court of
Harris County, Texas
Trial Court Cause No. 2011-22642

Respectfully submitted:

MATTHEWS | EASLEY | CHANEY

JEFFREY R. MATTHEWS
State Bar No. 00788824
TOBY C. EASLEY
State Bar No. 00787411
Granite Tower
13430 Northwest Freeway, Suite 990
Houston, Texas 77040-6000
Office:          (713) 223-4000
Facsimile:       (281) 589-9000

Attorneys for Defendants.

1

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been sent to the following party of record by the manner indicated.

Dated: 12/29/14

Jeffrey R. Matthews

Haseeb Butt
7201 Harwin Dr., Suite A
Houston, Texas 77036
Phone: (501) 256-2676
Fax: not provided
e-mail: chammeyvillecarwash@yahoo.com

___ CM, RRR; ___ Facsimile; ___ Hand Delivery; ✓ e-mail

2

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................4

STATEMENT OF FACTS .................................................................................5

SUMMARY OF THE ARGUMENT ...................................................................7

ARGUMENT....................................................................................................7

    Reply to Issue 1: Did the trial court err by refusing to grant a new trial
    because of perjury? ...................................................................................7

    Reply to Issue 2: Did the trial court err by refusing to grant a new trial
    because the evidence conclusively proved breach of contract and the
    covenant of good faith?...............................................................................8

    Reply to Issue 3: Did the trial court err by refusing to grant a new trial
    because the evidence conclusively proved fraud? ..................................10

    Reply to Issue 4: Did the trial court err by refusing to grant a new trial
    because the defendants did not deny "a number of issues and circumstantial
    evidence?"..................................................................................................13

PRAYER.........................................................................................................14

# INDEX OF AUTHORITIES

## CASES

*City of El Paso v. Arditti*, 378 S.W.3d 661 (Tex.App. - El Paso, 2012)...................... 12-13

*Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777 (Tex. App. 2013) .............. 7, 8, 10-11, 14

*Hoggett v. Brown*, 971 S.W.2d 472
    (Tex.App.–Houston [14 Dist.], 1997, review denied) ...........................................10

*ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399 (Tex. App. 2008)....................12

*Ohrt v. Union Gas Corp.*, 398 S.W.3d 315
    (Tex.App.-Corpus Christi, August 31, 2012) .........................................................9

*Peacock v. First Nationwide Bank FSB*,
    not Reported in S.W.2d, 1998 WL 34193642
    (Tex.App.-Eastland, 1998, no pet.)........................................................................10

*Warrantech Corp. v. Computer Adapters Servs., Inc.*,
    134 S.W.3d 516 (Tex. App. – Ft. Worth, 2004),
    *case dismissed (June 25, 2004)*..........................................................................7

## RULES

TEX. R. CIV. P. 324.............................................................................................7, 12

Tex.R.App.P. 38.1(i).........................................................................................7, 8, 11

## Statement of Facts

Mr. Butt, together with Mr. Sajid Khan, purchased a car wash in Duncanville, Texas. Subsequently, they started a restaurant. The restaurant performed poorly and lost a lot of money. The car wash business declined and lost a lot of money, too. (RR Vol. 2, Page 113, Line 10 – Page 114, Line 3); (RR Vol. 2, Page 132, Line 15 – Page 137, Line 15); (RR Vol. 2, Page 153, Line 7 – Page 156, Line 13).

As a result, tensions arose between Mr. Khan and Mr. Butt, to the point where Mr. Khan told Mr. Butt to stop coming to the business premises and causing trouble in front of the employees. (RR Vol. 2, Page 39, Line 20 – Page 42, Line 7); (RR Vol. 2, Page 123, Line 11 – Page 124, Line 20). This inflamed Mr. Butt, and he sued the defendants for fraud in Dallas County. The parties entered into a settlement agreement. Notably, the agreement, which Mr. Butt drafted, provided that upon breach, the agreement would be voided and the parties would be returned to their positions before its entry. (RR Vol. 4, Plaintiff's Exhibit 1); (RR Vol. 2, Page 152, Lines 7 – 22).

The settlement agreement called for an audit to be performed. The business learned that a full audit would be cost-prohibitive, and therefore, it was not done. (RR Vol. 2, Page 149, Lines 9 - 14). Mr. Butt then filed suit in Harris County to allege fraud, breach of contract, perjury and other causes of action as stated in his brief.

Mr. Butt alleged he was defrauded when he was listed as only a 15% owner of the company, as opposed to a 50% owner. At trial, the evidence showed that Mr. Butt was unable to qualify for the loan required to purchase the car wash. The lender, as part of its underwriting standards, prohibited any non-qualified borrower from owning more than 15% of the debtor-business. Therefore, Mr. Butt and the Khans agreed to state that Mr. Khan would be an 85% owner and Mr. Butt would be a 15% owner. (RR Vol. 2, Page 114, Line 4 – Page 119, Line 7);

5

(RR Vol. 2, Page 126, Line 25 – Page 127, Line 25). Mr. Butt was physically present at the closing where all the documents were executed and submitted. (RR Vol. 2, Page 119, Line 24 – Page 120, Line 15). Mr. Khan was required to personally guarantee the loan. Mr. Butt was not. (RR Vol. 2, Page 112, Line 8 – Page 113, Line 9). The jury heard testimony, corroborated by an e-mail from Mr. Butt, that Mr. Khan and Mr. Butt agreed to apply for the loan on an 85/15 ownership basis but have a side agreement that Mr. Butt would be a 50% owner for purposes of sharing any profits upon the ultimate sale of the business. (RR Vol. 2, Page 108, Line 19 – Page 111, Line 9).

The jury also heard testimony concerning three versions of "Minutes of LLC Meeting" contained as Defendants' Exhibit 5. (RR, Volume 4, Defendants' Exhibit 5). The first version showed the 50/50 split in ownership which the lender rejected. The second version showed the 85/15 split the lender approved. The third version showed the first version with a notary seal added. Mr. Butt wanted the document to be notarized to insure he had proof to support his rights under the parties' side agreement that he would be entitled to 50% of the proceeds of any sale of the business. (RR Vol. 2, Page 120, Line 16 – Page 121, Line 17). The jury heard additional evidence that Mr. Khan would be fine with a formal 50/50 arrangement if the lender would allow it; however, the loan documents prohibit a change in ownership without the lender's approval. (RR Vol. 2, Page 129, Line 24 – Page 132, Line 14).

Despite the evidence that Mr. Butt agreed to submitting themselves to the lender as 85/15 owners, Mr. Butt denied making this arrangement and claimed he was defrauded. The jury rendered a verdict that the parties' settlement agreement was not breached and that there was no fraud. Pursuant to the verdict, a take-nothing judgment was entered. Mr. Butt's motion for new trial was denied.

Mr. Butt alleges perjury in seeking reversal of the trial court's judgment. He claims that the Defendants committed perjury in connection with the procurement of an EIN from the IRS. He says that the perjury is clear because the loan documents identify the LLC before it was formed. In support of his position, he presented the certificate from the IRS showing an EIN was assigned on October 1. (RR Vol. 4, Plaintiff's Exhibit 113). He then noted that the loan application was dated September 26. Although, Mr. Butt claims these documents prove "perjury," the company information was simply put into the loan application without changing the date on the application. (RR Vol. 2, Page 11, Line 11 – Page 22, Line 12); (RR Vol. 2, Page 121, Line 18 – Page 122, Line 20).

## Summary of Argument

Mr. Butt, as the appellant, raises 4 issues. In each of them, he claims the trial court erred by denying him a new trial, which he contends should have been granted based on the fact that he conclusively proved his claims at trial. He did not preserve any claim of *factual* insufficiency or that the verdict is against the overwhelming weight of the evidence. Tex. R. Civ. P. 324.

Appellees will show that (1) the jury's negative findings are amply supported in the record, and (2) Mr. Butt has failed to preserve error by failing to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App.P. 38.1(i); *Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 784 (Tex. App. 2013).

## Issue No. 1
### Did the trial court err by refusing to grant a new trial because of perjury?

"A judgment is not procured by perjury unless the perjury prevented the injured party from fully presenting its case at trial or resulted in the court or jury being deceived as to a material issue." *Warrantech Corp. v. Computer Adapters Servs., Inc.*, 134 S.W.3d 516, 528 (Tex. App. – Ft. Worth, 2004), *case dismissed (June 25, 2004)*. During trial, Mr. Butt fully-

attempted to impeach the credibility of Mr. Khan. He was not hampered in any way. (RR Vol. 2, Page 11, Line 11 – Page 22, Line 12).

The crux of the perjury claim is that Mr. Butt contends that it is somehow material that the company's formation and acquisition of its EIN occurred *after* the date shown on the loan application. See Appellant's Brief, Page 19, Paragraph 19. The materiality of this matter is not apparent; however, the circumstances were sufficiently explained to the jury's satisfaction. Although, Mr. Butt claims this proves "perjury," the company information was simply put into the loan application without changing the date on the application. (RR Vol. 2, Page 11, Line 11 – Page 22, Line 12); (RR Vol. 2, Page 121, Line 18 – Page 122, Line 20).

For these reasons, there was no error in the trial court.

Issue No. 2
Did the trial court err by refusing to grant a new trial
because the evidence conclusively proved breach of contract and the covenant of good faith?

Mr. Butt has not briefed this issue and has cited no authority in support of any argument along these lines. Accordingly, this point should be deemed waived. See *Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 784 (Tex. App. 2013) ("Because appellants fail to provide 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record,' their first issue has not been preserved for our review and is overruled. *See* Tex.R.App.P. 38.1(i).).

Appellees believe Mr. Butt is referring to his claim that the defendants breached the settlement agreement made in the Dallas County lawsuit. See Appellant's Brief, Page 15, Paragraph 10 through Page 18, Paragraph 14. The jury found that the defendants did not breach the parties' settlement agreement. (Clerk's Record, Page 206).

Mr. Butt drafted the settlement agreement. (RR Vol. 2, Page 152, Lines 7 – 22). Paragraph 11 states:

8

> Failure of either party to comply with the terms of this Settlement Agreement will cause this agreement to become null and void and entitled [sic.] the non-breaching party to take legal action to protect his interests.

(RR Vol. 4, Plaintiff's Exhibit 1). Presumably, this provision was intended to place the parties back in their pre-agreement positions to where their original claims would be restored without being subjected to the defense of settlement and accord.

Paragraph 11 is clear, unequivocal and unambiguous. When language in a contract is capable of only a single, definite construction, a court is not permitted to reform it, and it must be enforced according to its clear terms. See *Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 323 (Tex.App.-Corpus Christi, August 31, 2012) (stating, "We enforce an unambiguous document as it is written.").

Giving effect to Paragraph 11, the result is that neither party can sue on the agreement and that each may sue and defend on such grounds as existed prior to the making of the agreement. Therefore, there is nothing in the settlement agreement to enforce. No claims can arise out of it. *Id.* Even if the jury had found there was a breach of the settlement agreement, no action for breach of contract could be maintained as a result of it. The parties were simply restored to their earlier positions as intended by Paragraph 11.

As a result, Mr. Butt brought his suit on the underlying case for fraud, but this time he sued in Harris County. Notably, as intended by Paragraph 11, his claims for fraud were not barred by settlement and accord.

As regards Mr. Butt's claim for a breach of a covenant of good faith, to the extent such a covenant was made, it would be subsumed as a contract provision as well. Therefore, when the

9

contract became null and void, so must have any alleged covenant of good faith. However, there was no such covenant, and the law does not imply one.

There appears to be no authority in Texas which holds that an ordinary settlement agreement to dispose of litigation between parties to a case gives rise to a duty of good faith. In *Peacock v. First Nationwide Bank FSB*, not Reported in S.W.2d, 1998 WL 34193642 (Tex.App.-Eastland, 1998, no pet.), the court held:

> Appellants also allege that appellees stood in a fiduciary relationship with them and also owed appellants a duty of good faith and fair dealing. This lawsuit arises out of a settlement agreement entered into to settle another lawsuit. We are not prepared to hold that such circumstances give rise to duties of good faith and fair dealing and create fiduciary relationships.

As regards other contexts in which such a covenant might be alleged by Mr. Butt to have existed, there is no duty of good faith between co-owners of a business. As held in *Hoggett v. Brown*, 971 S.W.2d 472, 487-88 (Tex.App.–Houston [14 Dist.], 1997, review denied):

> No formal fiduciary relationship existed between Brown and Hoggett. Brown and Hoggett were not partners. Brown was a limited partner in Telescan, Ltd. and Hoggett merely an employee of the limited partnership. Brown and Hoggett were both directors and shareholders of Telescan. A director's fiduciary duty runs only to the corporation, not to individual shareholders or even to a majority of the shareholders. *Gearhart Indus., Inc. v. Smith Int'l Inc.,* 741 F.2d 707, 721 (5th Cir.1984); *Schautteet v. Chester State Bank,* 707 F.Supp. 885, 888 (E.D.Tex.1988). Similarly, a co-shareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his co-shareholder. Kaspar v. Thorne, 755 S.W.2d 151, 155 (Tex.App. - Dallas 1988, no writt); *Schoellkopf v. Pledger,* 739 S.W.2d 914, 920 (Tex.App.—Dallas 1987), *rev'd on other grounds,* 762 S.W.2d 145 (Tex.1988).

Based on the foregoing, there was no error in the trial court.

Issue No. 3
Did the trial court err by refusing to grant a new trial
<u>because the evidence conclusively proved fraud?</u>

Mr. Butt has not briefed this issue and has cited no authority in support of any argument along these lines. Accordingly, this point should be deemed waived. See *Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 784 (Tex. App. 2013) ("Because appellants fail to provide 'a clear

and concise argument for the contentions made, with appropriate citations to authorities and to the record,' their first issue has not been preserved for our review and is overruled. *See* Tex.R.App.P. 38.1(i).).

Mr. Butt alleged he was defrauded when he was listed as only a 15% owner of the company, as opposed to a 50% owner. At trial, the evidence showed that Mr. Butt was unable to qualify for the loan required to purchase the car wash. The lender, as part of its underwriting standards, prohibited any non-qualified borrower from owning more than 15% of the debtor-business. Therefore, Mr. Butt and the Khans agreed to state that Mr. Khan would be an 85% owner and Mr. Butt would be a 15% owner. (RR Vol. 2, Page 114, Line 4 – Page 119, Line 7); (RR Vol. 2, Page 126, Line 25 – Page 127, Line 25). Mr. Butt was physically present at the closing where all the documents were executed and submitted. (RR Vol. 2, Page 119, Line 24 – Page 120, Line 15). Mr. Khan was required to personally guarantee the loan. Mr. Butt was not a guarantor. (RR Vol. 2, Page 112, Line 8 – Page 113, Line 9). The jury heard testimony, which was also corroborated by an e-mail from Mr. Butt, that Mr. Khan and Mr. Butt agreed to apply for the loan on an 85/15 ownership basis but have a side agreement that Mr. Butt would be a 50% owner for purposes of sharing any profits upon the ultimate sale of the business. (RR Vol. 2, Page 108, Line 19 – Page 111, Line 9).

The jury also heard testimony concerning three versions of "Minutes of LLC Meeting" contained as Defendants' Exhibit 5. (RR, Volume 4, Defendants' Exhibit 5). The first version showed the 50/50 split in ownership which the lender rejected. The second version showed the 85/15 split the lender approved. The third version showed the first version with a notary seal added. Mr. Butt wanted the document notarized to insure he had proof to support his rights under the parties' side agreement. (RR Vol. 2, Page 120, Line 16 – Page 121, Line 17). The

jury heard additional evidence that Mr. Khan would be fine with a formal 50/50 arrangement if the lender would allow it; however, the loan documents prohibit a change in ownership without the lender's approval. (RR Vol. 2, Page 129, Line 24 – Page 132, Line 14).

Despite the evidence that Mr. Butt agreed to submitting themselves to the lender as 85/15 owners, Mr. Butt denied making this arrangement and claimed he was defrauded. The jury rendered a verdict that the parties' settlement agreement was not breached and that there was no fraud.

Notably, Mr. Butt's point of error is based on a *legal* insufficiency standard (requiring conclusive proof of his fraud allegation) because he failed to preserve any complaint of *factual* insufficiency or that the verdict is against the overwhelming weight of the evidence. Tex. R. Civ. P. 324.

> To determine whether there is some evidence to support a finding of fact, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003). If more than a scintilla of evidence supports the finding of fact, we must uphold it. *See id.* More than a scintilla of evidence exists if the evidence " 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004)

*ODL Servs., Inc. v. ConocoPhillips Co.,* 264 S.W.3d 399, 417 (Tex. App. 2008).

Based on the foregoing portions of the record, there was sufficient evidence to support the jury's negative finding of fraud. The evidence showed that Mr. Butt was fully cognizant and that he participated in the submission of the loan application listing the parties as 85/15 owners in order to comply with the lender's underwriting criteria. The side agreement never was disputed and still remains undisputed. Thus, as a matter of law, there could be no fraud, and the issue is moot.

12

In *City of El Paso v. Arditti*, 378 S.W.3d 661, 665 (Tex.App. - El Paso, 2012), the court held:

> To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute.' " *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995), *quoting Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Ass'n*, 640 S.W.2d 778, 779–80 (Tex.App.-San Antonio 1982, writ ref'd n.r.e.); *Boerschig v. Southwestern Holdings, Inc.*, 322 S.W.3d 752, 762–63 (Tex.App.-El Paso 2010, no pet.). When the nature of the case falls within the general category of cases that the court is empowered to adjudicate pursuant to applicable statutory and constitutional provisions, subject-matter jurisdiction exists. *Cervantes v. Tyson Foods, Inc.*, 130 S.W.3d 152, 156 (Tex.App.-El Paso 2003, pet. denied).

Texas courts have power only over litigants with justiciable interests.

As is apparent, no defendant is contesting Mr. Butt's claim of equal ownership, except that the equality comes by way of a side-agreement which Mr. Butt disputes existed. The jury heard the evidence, weighed the parties' testimony and concluded there was no fraud.

There was no error in the trial court.

## Issue No. 4
### Did the trial court err by refusing to grant a new trial because the defendants did not deny "a number of issues and circumstantial evidence?"

Mr. Butt has not briefed this issue in any meaningful way that would allow the Appellees to respond. Other than with respect to the issues already addressed above, it is impossible to discern what the nature of the complaint might be, the portions of the record which are relied upon, and any applicable standards of law to apply.

Mr. Butt does not identify with any specificity which "issues and circumstantial evidence" are included in Issue No. 4. It appears he is tacking Issue No. 4 onto the previous issues, without citing to any authority or otherwise demonstrating it to be a valid, separate issue, rather than a non-substantive, splintered claim.

13

... an appellant must provide such a discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.,* 106 S.W.3d 118, 128 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Id.* Appellate courts must construe briefing requirements reasonably and liberally, but a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support his contention. *San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 338 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

*Gonzalez v. VATR Const. LLC,* 418 S.W.3d 777, 784 (Tex. App. 2013)

Issue No. 4 should be deemed waived.

## Prayer

For the foregoing reasons, Appellees request that the trial court's judgment be affirmed.

14

<u>CERTIFICATE OF WORD COUNT</u>

I certify that Microsoft Word indicates this document contains 3675 words.

Dated: _____12/29/14_____

Jeffrey R. Matthews